**UNITED STATES of America, Plaintiff,**

v.

**Frank W. SNEPP, III, Defendant.**

**Civ. A. No. 78–92–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

July 7, 1978.

Barbara Allen Babcock, Asst. Atty. Gen., Thomas S. Martin, Washington, D. C., William B. Cummings, U. S. Atty., Alexandria, Va., David J. Anderson, Washington, D. C., George P. Williams, Asst. U. S. Atty., Alexandria, Va., Elizabeth Gere Whitaker, Glenn V. Whitaker, Brook Hedge, Dept. of Justice, Washington, D. C., for plaintiff.

Mark H. Lynch, John H. F. Shattuck, American Civil Liberties Union, Washington, D. C., Bruce J. Ennis, Joel M. Gora, Jack D. Novik, American Civil Liberties Union, New York City, Alan M. Dershowitz, Cambridge, Mass., Geoffrey J. Vitt, Alexandria, Va., John Cary Sims, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, Senior District Judge.

In this case the United States does not seek to enjoin the publication of a book [1] but rather to redress through more commonly utilized remedies the defendant's breach of his contractual and fiduciary duties caused by his failure to submit to the CIA for its initial review all manuscripts which contain information gained by him as a result of his CIA employment.

The defendant admits he did not submit the said manuscripts to the Agency for pre-publication review—he says he was not under any legal obligations to so do because the secrecy agreement in question violates the First and Fifth Amendments to the United States Constitution.

He claims the United States lacks standing to bring this suit because it does not allege any harm to the national security or other cognizable interest of the United States.

He further claims the termination secrecy agreement he signed when he resigned from the CIA relieved him of his obligation to submit the said manuscripts for pre-publication review—and that even if the September 16, 1968 secrecy agreement were enforceable, CIA breached the agreement by failing to provide him an opportunity for a hearing on the evacuation of Vietnam.

He also claims the CIA is estopped from enforcing the secrecy agreement against him because it has permitted other employees to make unauthorized disclosures of information concerning the Agency, including information concerning intelligence sources and methods.

He claims the CIA fraudulently induced him to accept employment with the Agency and to sign the secrecy agreement.

---

1. The book "Decent Interval" was published prior to the filing of this suit.

He also claims duress—lack of consideration—mutuality of obligations—perpetuity—and that it is an unreasonable contract of adhesion and an unconscionable agreement.

He says he did not and does not owe any fiduciary duty to the CIA and that the Government has failed to mitigate its purported damages.

He prays that the suit be dismissed with prejudice and in the event the action goes to trial, he demands a trial by jury.

The Government's motion for an immediate judgment on the pleadings was denied pending completion of the record by both parties via discovery.

After completion of extensive discovery, the defendant filed a motion for summary judgment—that motion was heard and denied and the case was set for a formal pretrial hearing to identify what factual issues, if any, remained to be heard by the Court and/or the jury on June 20.

Based on the record thus made, the Court concluded that all the material facts were undisputed—whereupon, the jury panel was excused and the matter was heard and determined by the Court on the stipulations and the live and documentary evidence tendered by the parties in support of their respective positions.

The parties stipulated:

1. The Central Intelligence Agency, an agency of the United States, was established by the National Security Act of 1947. Under the provisions of the Act and implementing provisions of Executive Order 12036 and predecessor Executive Orders, the Agency is authorized to collect intelligence information relating to National Security and to correlate, evaluate, and disseminate within the United States Government, intelligence relating to National Security.

2. The position of the Director of Central Intelligence was established by the National Security Act of 1947. The Director serves as head of the Agency. Section 102(d)(3) of the Act, Title 50, United States Code, § 403(d)(3), charges the Director with responsibility for "protecting intelligence sources and methods from unauthorized disclosure."

3. On September 16, 1968, prior to the commencement of his official duties as an employee of the Central Intelligence Agency, defendant Frank W. Snepp III signed a secrecy agreement with the Agency. A true and correct copy of that agreement is attached to the complaint as Exhibit A.

4. Defendant Frank W. Snepp III was employed by the Central Intelligence Agency from September 16, 1968, until he resigned, effective January 23, 1976. During the period of his Agency employment, defendant Snepp served two tours of duty in South Vietnam. The dates on his tours of duty were from June 2, 1969 to June 21, 1971 and from October 4, 1972 to April 29, 1975.

5. During the course of his employment by the Central Intelligence Agency, defendant Frank W. Snepp III was assigned to various positions of trust, including two tours of duty in South Vietnam during the periods June 2, 1969 to June 21, 1971 and from October 4, 1972 to April 29, 1975, and was granted frequent access to classified information, including information regarding intelligence sources and methods.

6. Defendant Frank W. Snepp III submitted to Random House, Inc., for publication a non-fiction book entitled "Decent Interval". The book concerns the activities of the Central Intelligence Agency in South Vietnam and elsewhere, and it is based in large part on information obtained by defendant Snepp in the course of his Agency employment, including his tours of duty in South Vietnam during the periods June 2, 1969 to June 21, 1971 and from October 4, 1972 to April 29, 1975.

7. In November, 1977, Random House, Inc. published and placed in the stream of commerce for ultimate retail sale the non-fiction book by the defendant Frank W. Snepp III, entitled "Decent Interval".

Snepp admits in his answer and in his deposition that he did not submit his manuscripts relating to his book, "Decent Interval", to the CIA for pre-publication review.

The Court finds from the evidence thus received that Frank W. Snepp III was fully briefed and advised before entering on duty with the CIA that he was undertaking a position of trust in that Agency of the Government responsible to the President and the National Security Council for intelligence relating to the security of the United States of America;

That he understood that in the course of his employment he would acquire information about the CIA and its activities and about intelligence acquired or provided by the Agency;

That he knew that employment by the Government was a privilege—not a right;

That he had to sign a secrecy agreement upon entering on duty with the CIA;

That he read and fully understood the duties and responsibilities set forth in the said secrecy agreement; and

That he signed the said secrecy agreement on September 16, 1968 without any mental reservations or purpose of evasion.

Mr. Snepp knew—he was told by Admiral Turner, Associate Counsel and other CIA officials that he could not release his manuscripts on the evacuation of Vietnam for publication without prior Agency approval.

He knew this Court had enjoined Victor L. Marchetti, a former employee of the CIA, from publishing his proposed book in violation of his secrecy agreement.

Although he assured, or at least lead both Admiral Turner and Mr. Morrison of the CIA legal staff to believe that he would submit his manuscripts for Agency review before publication—the Court finds he had no intention of so doing because he was then making secret arrangements with Random House, Inc. to publish the book— all negotiations were conducted on park benches, in restaurants and/or in the public library. Snepp admits he did everything he could to keep the CIA from knowing about it prior to publication.

The Court finds from this evidence that Frank W. Snepp III willfully, deliberately and surreptitiously breached his position of trust with the CIA and the secrecy agree-ment dated September 16, 1968 by causing Random House, Inc. to publish "Decent Interval" (an insider's [his] account of Saigon's indecent end) without specific prior approval by the Central Intelligence Agency.

The Court further finds Mr. Snepp published the book "Decent Interval" for personal financial gain—he admits he has already received some sixty thousand dollars in advance payments and the contract with Random House, Inc. calls for royalties and other potential profits.

The undisputed evidence discloses that the CIA collects intelligence by two generic ways—one is through human sources who tell us information—we call that "sources" —the other is through technical means of collecting data, where a machine does it for you in one way or another—we call those "methods" of collecting intelligence.

Most of CIA's sources and methods are classified—if you disclose sources you are subjecting them to possible death, possible loss of position, possible loss of job—if you disclose your methods, you are making available to others the development of counter-methods to your methods, that would in effect make them useless.

The National Security Act of 1947— amended 1969—requires the Director of the CIA to prohibit intelligence sources and methods from unauthorized disclosure.

Both Admiral Turner and Mr. Colby testified, "In order to maintain your secrets you must have some form of control over unauthorized release."

When Admiral Turner was asked if there had been any adverse effect resulting from Snepp's refusal to submit his book for prepublication review, he replied:

There clearly has. Over the last six to nine months, we have had a number of sources discontinue work with us. We have had more sources tell us that they are very nervous about continuing work with us. We have had very strong complaints from a number of foreign intelligence services with whom we conduct liaison, who have questioned whether

they should continue exchanging information with us, for fear it will not remain secret. I cannot estimate to you how many potential sources or liaison arrangements have never germinated because people were unwilling to enter into business with us. . . .

Admiral Turner did not attribute all of this to Mr. Snepp—he said:

[H]is is one, and a very serious one, of a number of incidents that have diminished this world-wide confidence in our ability.

His, in particular, because it has flaunted the basic system of control that we have. If he is able to get away with this, it will appear to all those other people that we have no control, we have no way of enforcing the guarantee which we attempt to give them when we go to work with them.

Mr. Colby, a former Director of the CIA, was called by the defendant—he said substantially the same thing.

■ The Court finds that the publication of Snepp's book, "Decent Interval", absent CIA pre-publication review has caused the United States irreparable harm and loss. It has impaired CIA's ability to gather and protect intelligence relating to the security of the United States of America.

Snepp's attempts to justify his failure to submit his book to the CIA for pre-publication review on numerous grounds—all of which lack sufficient evidentiary and/or legal support.

He misreads *Marchetti*[2]—as supporting his First and Fifth Amendment claims—that case does not invalidate CIA's secrecy agreement.

Chief Judge Haynsworth, speaking for the Fourth Circuit Court of Appeals, held:

[T]hat the secrecy agreement executed by Marchetti at the commencement of his employment was not in derogation of Marchetti's constitutional rights. Its provision for submission of material to the CIA for approval prior to publication is enforceable, provided the CIA acts

promptly upon such submissions and withholds approval of publication only of information which is classified and which has not been placed in the public domain by prior disclosure.

Snepp's 1968 secrecy agreement and Marchetti's secrecy agreement are sufficiently similar to warrant the same holding.

Snepp's secrecy agreements are clear and unambiguous. His 1976 secrecy termination agreement is not limited to classified information, as he would have you read it—it reads classified information or any information concerning intelligence of CIA that has not been made public by CIA.

Both secrecy agreements require submission of all such material for CIA pre-publication review.

Snepp's termination briefing indicates he was so told.

Further, Snepp is not the judge of what portions, if any, of CIA's intelligence may be made public.

On the question of whether the CIA breached ¶ 6 of the 1968 secrecy agreement—the defendant says no one in the CIA would give him a hearing on his complaint in re the evacuation of Vietnam. The Government concedes the defendant was not given the requested hearing. He admits, however, he did not present this grievance or complaint to the Inspector-General as provided for in the said paragraph.

¶ 6 of the 1968 secrecy agreement is clear and unambiguous. That paragraph pertains to the carrying of grievances or complaints outside the Agency—had the CIA breached ¶ 6—(and the Court did not so find)—that would not release the defendant from fully complying with ¶ 8 of the secrecy agreement.

Snepp was given every opportunity to prove his claims of fraud and duress—he withdrew his claim of duress before trial and said his only evidence of fraud was that a briefing officer had told him he could use his discretion in determining what should or

2. *United States v. Marchetti*, 466 F.2d 1309 (1972).

should not be released to the public—he claims he would not have signed the secrecy agreement otherwise. He could neither name nor identify the briefing officer prior to the trial even though he had seen and talked to all three of them. He did name one, however, when the three were required to stand in the courtroom. The one named had no recollection of ever seeing or talking to Snepp in 1968.

Fraud, in the procurement of a contract, requires far more convincing evidence.

■ The secrecy agreement of 1968 is clear and unambiguous—oral testimony is inadmissible to vary the unambiguous terms of a written agreement. *See Rock-Ola Manufacturing Corp. v. Wertz*, 282 F.2d 208 (4th Cir. 1960).

■ Further, a CIA briefing officer has no authority to change or alter the terms of the CIA secrecy agreement.

■ Snepp's claim that the United States lacks standing to bring this suit—lacks merit.

Jurisdiction arises from the presence of the United States as a party. 28 U.S.C. § 1345. "The government can sue even if there is no specific authorization. In such cases, however, it must have some interest to be vindicated sufficient to give it standing." C. A. Wright, Federal Courts 68 (2d ed. 1970), ch. 3 § 22. Standing arises from the government's interest in protecting the national security.[3]

*United States v. Marchetti, supra,* at 1313. *See also, id.* n. 3.

The defendant's other defenses have been fully heard and denied for the reasons then stated—there is no need to repeat them again.

We now turn to the question of damages.

■ Counsel for Snepp says there is insufficient evidence in this case to support any award beyond nominal damages—we disagree—nominal damages in a case like this would be nothing more than a license to continue doing that which the law forbids.

This action involves a substantial wrong to the United States and to the public's interest in the effective functioning of its Government.

Snepp's willful refusal to comply with his pre-publication review obligations to the CIA demonstrates, unless redressed, the potential vulnerability of all information provided to the CIA on a confidential basis. It is elementary that the successful conduct of international diplomacy and the maintenance of an effective national defense require both confidentiality and secrecy. Other nations can hardly deal with this nation in an atmosphere of mutual trust unless they can be assured that their confidence will be kept.

Although such injury is not quantifiable with any reasonable degree of certainty, nominal damages are grossly inadequate as redress for Mr. Snepp's willful breach of trust.

As was said by Chief Judge Haynsworth in *Marchetti, supra:*

Gathering intelligence information and the other activities of the Agency, including clandestine affairs against other nations, are all within the President's constitutional responsibility for the security of the Nation as the Chief Executive and as Commander in Chief of our Armed Forces. Const., art. II, § 2. Citizens have the right to criticize the conduct of our foreign affairs, but the Government also has the right and the duty to strive for internal secrecy about the conduct of governmental affairs in areas in which disclosure may reasonably be thought to be inconsistent with the national interest.

\*  \*  \*  \*  \*  \*

Although the First Amendment protects criticism of the government, nothing in the Constitution requires the government to divulge information:

\*  \*  \*  \*  \*  \*

Congress has imposed on the Director of Central Intelligence the responsibility for protecting intelligence sources and methods. 50 U.S.C. § 403(d)(3). In at-

tempting to comply with this duty, the Agency requires its employees as a condition of employment to sign a secrecy agreement, and such agreements are entirely appropriate to a program in implementation of the congressional direction of secrecy. Marchetti, of course, could have refused to sign, but then he would not have been employed, and he would not have been given access to the classified information he may now want to broadcast.

Confidentiality inheres in the situation and the relationship of the parties. Since information highly sensitive to the conduct of foreign affairs and the national defense was involved, the law would probably imply a secrecy agreement had there been no formally expressed agreement, but it certainly lends a high degree of reasonableness to the contract in its protection of classified information from unauthorized disclosure.

Moreover, the Government's need for secrecy in this area lends justification to a system of prior restraint against disclosure by employees and former employees of classified information obtained during the course of employment. One may speculate that ordinary criminal sanctions might suffice to prevent unauthorized disclosure of such information, but the risk of harm from disclosure is so great and maintenance of the confidentiality of the information so necessary that greater and more positive assurance is warranted. Some prior restraints in some circumstances are approvable of course. See *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

Although Snepp retains the right to speak and write about the CIA, and to criticize it as any other citizen may—he may not publish any information or material relating to the CIA, its activities or intelligence activities generally, obtained during the course of his employment, either during or after the term of his employment, without specific prior approval by the Agency.

The CIA cannot protect its intelligence sources and methods if its agents are allowed to determine what intelligence ought to be made public.

One who breaches his trust and secrecy agreements with the agency of the United States charged with the responsibility for protecting intelligence sources and methods ought not to be permitted to retain his ill-gotten gains.

Anything less will not suffice to prevent unauthorized disclosure of such information.

Courts of equity frequently go much further to give relief in furtherance of the public interest than they are accustomed to go when only private interests are at stake.

Therefore the Court will exercise its equity powers and impose a constructive trust over and require an accounting of any and all revenue, gains, profits, royalties and other advantages derived by the defendant from the sale, serialization, republication rights in any form, movie rights or other distribution for profit of the work entitled "Decent Interval".

In addition, the defendant will be enjoined from any further violation of his secrecy agreement by requiring him to submit to the Central Intelligence Agency for pre-publication review any manuscript which the defendant authors which concerns the Central Intelligence Agency, its activities or intelligence activities generally which the defendant gained during the course of or as a result of his employment with the Agency.

And It Is So Ordered.

Counsel for the Government should forthwith prepare an appropriate judgment and injunction in accordance with this Memorandum Opinion and Order, submit the same to counsel for the defendant for approval as to form, and then to the Court for entry.