**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank W. SNEPP, III,
Defendant–Appellant.**

**No. 89–2951.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1990.
Decided Feb. 27, 1990.

---

Mark H. Lynch, Covington & Burling, Washington, D.C., argued for defendant-appellant; William H. Allen, Steven F. Reich, Washington, D.C., on brief.

Deborah Ruth Kant, Civ.Div., U.S. Dept. of Justice, Washington, D.C., argued for plaintiff-appellee; Stuart E. Schiffer, Act-

ing Asst. Atty. Gen., Barbara L. Herwig, Civ.Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

## I.

Frank Snepp III appeals from the district court's denial of his petition to modify a permanent injunction requiring him to submit all writings concerning the Central Intelligence Agency (CIA) for review prior to publication. Snepp served as an agent for the CIA from 1968 to 1976 and spent most of his time either in Vietnam or working on matters related to Vietnam. After resigning from the Agency, he published a book in 1977 about the United States' involvement in Vietnam, entitled *Decent Interval,* in violation of an employment agreement to submit all writings to the CIA for review prior to publication.[1] The government brought an action to enforce the contract, seeking a permanent injunction against future breaches of the contract and a constructive trust over the net profits from the book. Snepp argued that the agreement was unenforceable as an impermissible restriction on his First Amendment right to free speech.

The district court found that the agreement was enforceable and that Snepp had violated the agreement by publishing the book without submitting it for review prior to publication. *United States v. Snepp,* 456 F.Supp. 176 (E.D.Va.1978). The district court imposed a constructive trust over profits from the book and ordered that Snepp be permanently enjoined

---

1. As a condition of his employment with the CIA in 1968, Snepp signed an agreement promising that he would "not ... publish ... any information or material relating to the Agency, its activities or intelligence activities generally, either during or after the term of [his] employ-

ment ... without specific approval by the Agency." *Snepp v. United States,* 444 U.S. 507, 508, 100 S.Ct. 763, 764, 62 L.Ed.2d 704 (1980). He signed a similar secrecy agreement upon leaving the CIA in 1976.

from further breaching the terms and conditions of the defendant's Secrecy Agreement and fiduciary duty with the Central Intelligence Agency by failing to submit any manuscript or other writing containing information which relates to the Central Intelligence Agency, ... which information the defendant gained during the course of or as a result of his employment with the Central Intelligence Agency, for Agency review prior to publication; *Provided,* however, that Agency review shall be made within thirty (30) days after receipt of such writing, and *Provided,* further, that the only material for which approval for publication may be withheld by the Agency is that material which the Agency determines to be classified.

Snepp appealed, pressing his argument that the prepublication review procedure constituted a prior restraint in violation of his First Amendment right to free speech and that the government interest at stake did not justify the drastic remedy of a constructive trust. We affirmed the injunction, but reversed the imposition of a constructive trust. *United States v. Snepp,* 595 F.2d 926 (4th Cir.1979). Citing the compelling national security interests at stake and the CIA's statutory duty to protect sensitive information against public disclosure, the Supreme Court found the secrecy agreement reasonable and affirmed the injunction. *Snepp v. United States,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980).

The Court also reinstated the constructive trust as the only effective deterrent to breach of the agreement. The government's only alternative remedy, a suit for punitive damages, "would subject the CIA and its officials to probing discovery into the Agency's highly confidential affairs." 444 U.S. at 514–15, 100 S.Ct. at 768. By forcing revelation of confidential information, even to a limited audience, the CIA would lose "the benefit of the bargain it seeks to enforce." *Id.*

Since the Supreme Court decision, Snepp has submitted 19 manuscripts to the CIA's Prepublication Review Board (PRB) for approval prior to publication. The parties have been able to reach a satisfactory agreement over the publication of 18 of those manuscripts. Disagreement over the last, however, has led to the litigation before us.

On November 22, 1985, Snepp submitted to the PRB a manuscript for a potential television mini-series entitled "Background: Lawcase Story" about Snepp's experiences in Vietnam. The PRB telephoned Snepp on December 20, 1985, to ask whether the manuscript would be published as fact or fiction. Snepp indicated that he did not know the answer at that point. On December 30, 1985, he received a letter from the PRB with a "broad and general" review prohibiting Snepp's use of any overseas CIA location (except Saigon), any real names (except his own), and the use of the name of a specific company. Snepp responded with a letter in January protesting that the review was late, the conditions were vague, and the restrictions were unwarranted because the PRB had cleared similar material in the past.

In February, the PRB produced a list of 11 specific deletions as a condition to publication. Negotiations continued, and Snepp appealed the decision within the Agency. On March 27, 1987, the CIA finally reversed the PRB with respect to all but one deletion. Because of the delay, however, Snepp's television deal had already fallen through.

Snepp filed a petition in the district court below seeking (1) an order to show cause why the government should not be held in contempt for violating the injunction, (2) damages for the lost television deal, (3) an order disapproving the one remaining deletion required by the PRB, and (4) a clarification or modification of the permanent injunction to place the burden on the CIA to initiate judicial proceedings if he and the CIA could not agree over what material should be deleted from a particular manuscript. The district judge found that the CIA had acted reasonably and that Snepp had not shown a sufficient need to modify the injunction. Consequently, the district court denied all relief sought by Snepp.

## II.

■ On appeal, Snepp contests only the district court's refusal to amend the permanent injunction. A modification may be granted where warranted by a change in the law or the circumstances. *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *Nelson v. Collins*, 700 F.2d 145, 147 (4th Cir.1983). A court is, nevertheless, "not at liberty to reverse under the guise of readjusting." *Swift*, 286 U.S. at 119, 52 S.Ct. at 464. We review the district court's decision not to modify the injunction under an abuse of discretion standard. *Brennan v. Thor*, 516 F.2d 999 (4th Cir.1975).

■ The present injunction makes CIA approval a precondition to Snepp's publication of any writing relating to the CIA. The CIA may, however, withhold that approval only for classified information that has not already been disclosed to the public. If Snepp disagrees with the Agency over the propriety of its decision to withhold approval and he cannot negotiate a satisfactory resolution, he must either accede to the Agency's conditions or initiate a judicial action.[2] The question confronting us thus becomes one of where the burden lies of initiating the attempt to secure judicial review.

Snepp argues that the CIA's interest in protecting confidential information may justify prepublication review, but that interest does not justify placing the burden on him to seek judicial resolution of disputes that arise. For support, Snepp cites *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), in which the Court struck down a state statute requiring submission of motion pictures to a board of censors before any movie could be exhibited. The Court found, in part, that any review system must put the burden on

the government to seek an injunction. 380 U.S. at 59, 85 S.Ct. at 739.

Snepp proposes an alternative modeled on the Department of Justice Guidelines. Under his proposal, the author could announce an intent to publish notwithstanding disapproval by the Agency. The CIA would then have 15 days in which to decide whether to file an action seeking an injunction against publication. Snepp argues that the existing Department of Justice scheme proves that placing the burden on the Agency is feasible and would not compromise security interests.

Snepp's argument encounters several difficulties. First, nothing he cites is a change in the law or the circumstances which existed at the time his injunction was affirmed by the Supreme Court. He is essentially arguing that the original decision in his case should have placed the burden on the CIA to seek judicial review. Reasserting the merits of his case does not, however, justify altering an injunction.

Second, the issue has been squarely addressed in this circuit in *United States v. Marchetti*, 466 F.2d 1309 (4th Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972). In *Marchetti*, the defendant was also a former CIA employee who had published a novel and an article in violation of a secrecy agreement similar to Snepp's. In evaluating the government interest at stake, we noted that:

[c]itizens have the right to criticize the conduct of our foreign affairs, but the Government also has the right and the duty to strive for internal secrecy about the conduct of governmental affairs in areas in which disclosure may reasonably be thought to be inconsistent with national interest.

---

**2.** While the author is entitled to judicial review, the scope of that review is narrow. Courts must avoid second-guessing the CIA's decision to classify information because they have only a limited knowledge of foreign intelligence matters. "What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *United States v. Marchetti*, 466 F.2d 1309, 1318

(4th Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972). *Cf. CIA v. Sims*, 471 U.S. 159, 178, 105 S.Ct. 1881, 1892, 85 L.Ed.2d 173 (1985) (quoting this language with approval in the context of a Freedom of Information Act request). As a result, "[t]he issues upon judicial review would seem to be simply whether or not the information was classified and, if so, whether or not, by prior disclosure, it had come into the public domain." 466 F.2d at 1318.

466 F.2d at 1315. The court found the secrecy agreement a reasonable means to protect confidential information from disclosure. The court went on to say that since First Amendment rights are involved, we think Marchetti would be entitled to judicial review of any action by the CIA disapproving publication of the material. Some such review would seem essential to the enforcement of the prior restraint imposed upon Marchetti and other former employees. See *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649. Because of the sensitivity of the area and confidentiality of the relationship in which the information was obtained, however, we find no reason to impose the burden of obtaining judicial review upon the CIA. It ought to be on Marchetti.

466 F.2d at 1317.[3] The court noted the *Freedman* decision, but distinguished it, finding that the national security interests at stake required a different result.[4] These unique national security concerns also dispose of Snepp's attempt to equate his situation with that of a former employee of the Department of Justice.

Snepp argues that the Supreme Court decision affirming the injunction in his prior case, *Snepp v. United States*, 444 U.S.

507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980), overruled *Marchetti* and placed the burden of seeking review on the CIA instead of the author. His argument rests on footnote 8 which states in part:

> The dissent argues that the Court is allowing the CIA to 'censor' its employees' publication.... Snepp's contract, however, requires no more than a clearance procedure subject to judicial review. If Snepp, in compliance with his contract, had submitted his manuscript for review and the Agency had found it to contain sensitive material, presumably—if one accepts Snepp's present assertion of good intentions—an effort would have been made to eliminate harmful disclosures. Absent agreement in this respect, the Agency would have borne the burden of seeking an injunction against publication. *See Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362 (CA4), cert. denied, 421 U.S. 992 [95 S.Ct. 1999, 44 L.Ed.2d 482] (1975); *United States v. Marchetti*, 466 F.2d 1309 (CA4), cert. denied, 409 U.S. 1063 [93 S.Ct. 553, 34 L.Ed.2d 516] (1972).

*Snepp*, 444 U.S. 507, 513, n. 8, 100 S.Ct. 763, 767, n. 8, 62 L.Ed.2d 704 (1980).

While the language in the footnote arguably imposes on the CIA the burden of

---

**3.** Even if the government has a tendency to "classif[y] as confidential much relatively innocuous or noncritical information," *Halperin v. Kissinger*, 606 F.2d 1192, 1204 n. 77 (D.C.Cir. 1979), aff'd by an equally divided court, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981), the government interests at stake justify placing the burden on the author to seek judicial review. The CIA has a compelling interest in preventing the disclosure or even the fear of disclosure of confidential information. Requiring the CIA to review the two to three hundred manuscripts submitted each year and to decide in a matter of days whether to ask the Department of Justice to file suit for an injunction would increase the risk that the Agency might miss the significance of some information and allow a damaging revelation. The Agency could, as a consequence, decide, as a protective measure, to file suit for an injunction on a routine basis. The result would be unnecessary costs for both the government and the authors who have to defend themselves.

The CIA also has a legitimate interest in avoiding litigation altogether. In a related context, we have "expressed our concern about the

disclosure of sensitive information to lawyers, judges, court reporters, expert witnesses and others." *Colby v. Halperin*, 656 F.2d 70, 72 (4th Cir.1981). *See also Snepp*, 444 U.S. 507, 100 S.Ct. 763; *Knopf v. Colby*, 509 F.2d 1362 (4th Cir.1975). In adjudicating potentially confidential information, courts cannot provide the level of security that the CIA reasonably requires for highly sensitive information. Moreover, the Director of the CIA, Admiral Turner, testified in Snepp's original case that foreign intelligence services and sources would not deal with the CIA unless assured that any information exchanged would remain secret. *Snepp*, 444 U.S. at 512, 100 S.Ct. at 766–67. Requiring the Agency to institute numerous judicial actions to prevent disclosure could create the impression among foreign intelligence services that the Agency cannot ensure the non-disclosure of shared confidential information.

**4.** Even the dissent in *Snepp* agreed that the "right to delay publication until the review is completed is itself a form of prior restraint that would not be tolerated in other contexts." *Snepp*, 444 U.S. at 526, n. 17, 100 S.Ct. at 774, n. 17 (Stevens, J., dissenting).

seeking an *injunction* by initiating a legal proceeding, such a requirement would not eliminate Snepp's burden to seek judicial review of the Agency's decision to withhold approval. "In compliance with his contract," Snepp must submit his manuscript to the Agency for clearance prior to publication. If the Agency denies approval, Snepp may not publish the manuscript. If Snepp wishes to publish a manuscript in spite of the Agency's denial of approval without violating his secrecy agreement, then he must institute an action for judicial review of the Agency decision. Whether or not Snepp seeks judicial review of the Agency decision, the CIA still has an option to seek an injunction against his publication of a disputed manuscript, thus enhancing its ability to enforce the secrecy agreement with the contempt powers of the court.[5]

While we offer the above analysis as a plausible interpretation of footnote 8, we need only decide if the Supreme Court intended to overrule *Marchetti*. A number of considerations suggest that the Court did not so intend. The Court cites *Marchetti*, with apparent approval, as support for the very statement Snepp uses to make his argument. Moreover, in the text of the decision, the Court emphasizes Snepp's "explicit obligation to submit his material—classified or not—for prepublication *clearance....*" *Snepp*, 444 U.S. at 513, 100 S.Ct. at 767 (emphasis added). The language strongly suggests that the Court viewed Snepp's duty as an obligation to obtain "clearance" from the CIA prior to publication. The only substitute for CIA clearance would be a judicial declaration that clearance had been improperly withheld. We also note that the Court in *Snepp* found the secrecy agreement enforceable and affirmed the injunction, both of which indicate that CIA approval is a precondition to publication. As a final consideration, the Court imposed the relatively drastic remedy of a constructive trust in part to avoid forcing the CIA to sue in open court for punitive damages. Placing the burden to seek an injunction on the author

in such a context is consistent with the same policy.

For those reasons, we are not persuaded that the Supreme Court intended to overrule *Marchetti*. We are thus bound by the decision and find that the district court did not abuse its discretion in declining to modify the injunction.

*AFFIRMED.*

---

**5.** Presumably the present injunction serves such a purpose. The disputed footnote, however, re-

fers to CIA options absent such an injunction.