07-4943-cv
John Doe Inc., et al. v. Mukasey, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2008

Heard: August 27, 2008                    Decided: December 15, 2008

Docket No. 07-4943-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JOHN DOE, INC., JOHN DOE, AMERICAN CIVIL LIBERTIES
UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION,
        Plaintiffs-Appellees,

                    v.

MICHAEL B. MUKASEY, in his official capacity as
U.S. Attorney General of the United States,
ROBERT MUELLER, in his official capacity as
Director of the Federal Bureau of Investigation,
VALERIE E. CAPRONI, in her official capacity as
General Counsel of the Federal Bureau of
Investigation,
        Defendants-Appellants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, CALABRESI, and SOTOMAYOR, Circuit Judges.

    Appeal by the Government from the September 7, 2007, judgment of

the United States District Court for the Southern District of New York

(Victor Marrero, District Judge), in litigation concerning First

Amendment challenges to the constitutionality of statutes governing

the issuance and judicial review of National Security Letters

("NSLs"), 18 U.S.C. §§ 2709, 3511(b), which request records from

providers of wire or electronic communication services. The judgment,

stayed on appeal, enjoins FBI officials from (1) issuing NSLs under

section 2709, (2) enforcing the nondisclosure requirement of subsection 2709(c), and (3) enforcing the provision for judicial review of the nondisclosure requirement contained in subsection 3511(b).

The Court of Appeals construes the statutes to avoid some constitutional challenges, rules that subsections 2709(c) and 3511(b) are unconstitutional to the extent that they impose a nondisclosure requirement on NSL recipients without placing on the Government the burden of initiating judicial review of such a requirement, rules that subsections 3511(b)(2) and (b)(3) are unconstitutional to the extent that, upon such review, a governmental official's certification that disclosure may endanger the national security of the United States or interfere with diplomatic relations is treated as conclusive, modifies the district court's injunction by limiting it to enjoining FBI officials from enforcing the nondisclosure requirement of section 2709(c) in the absence of Government-initiated judicial review, and remands for a hearing.

Affirmed in part, reversed in part, and remanded.

Gregory G. Katsas, Asst. Atty. General, Washington, D.C. (Jeffrey S. Bucholtz, Acting Asst. Atty. General, Jonathan F. Cohn, Deputy Asst. Atty. General, Douglas N. Letter, Scott R. McIntosh, U.S. Department of Justice, Washington, D.C.; Michael J. Garcia, U.S. Atty., Jeffrey Oestericher, Benjamin H. Torrance, Asst. U.S. Attys., New York, N.Y., on the

brief), for Defendants-Appellants.

Jameel Jaffer, New York, N.Y. (Melissa Goodman, L. Danielle Tully, American Civil Liberties Union Foundation, New York, N.Y.; Arthur N. Eisenberg, New York Civil Liberties Union Foundation, New York, N.Y., on the brief), for Plaintiffs-Appellees.

(Claire E. Coleman, Brune and Richard LLP, New York, N.Y.; Peter Barbur, Ass'n of the Bar of the City of New York, N.Y., submitted a brief for <u>amicus curiae</u> The Ass'n of the Bar of the City of New York, in support of Plaintiffs-Appellees.)

(Meredith Fuchs, National Security Archive, George Washington University, Washington, D.C.; Marcia Hofmann, Electronic Frontier Foundation, San Francisco, Cal., submitted a brief for <u>amici curiae</u> National Security Archive and Electronic Frontier Foundation, in support of Plaintiffs-Appellees.)

(Theresa A. Chmara, Brian Hauck, Anne E. Ralph, Jenner & Block LLP, Washington, D.C., for <u>amici curiae</u> American Library Ass'n, <u>et al.</u>, in support of Plaintiffs-Appellees.)

JON O. NEWMAN, <u>Circuit Judge</u>.

This appeal concerns challenges to the constitutionality of statutes regulating the issuance by the Federal Bureau of Investigation ("FBI") of a type of administrative subpoena generally known as a National Security Letter ("NSL") to electronic communication service providers ("ECSPs"). <u>See</u> 18 U.S.C. §§ 2709, 3511 (collectively "the NSL statutes"). ECSPs are typically telephone

companies or Internet service providers.  An NSL, in the context of

this appeal,[1] is a request for information about specified persons or

entities who are subscribers to an ECSP and about their telephone or

Internet activity.  Primarily at issue on this appeal are challenges

to the provisions (1) prohibiting the recipient from disclosing the

fact that an NSL has been received, see 18 U.S.C. § 2709(c), and (2)

structuring judicial review of the nondisclosure requirement, see id.

§ 3511(b).

These challenges arise on an appeal by the United States from the

September 7, 2007, judgment of the District Court for the Southern

District of New York (Victor Marrero, District Judge), enjoining FBI

officials from (1) issuing NSLs under section 2709, (2) enforcing the

nondisclosure requirement of subsection 2709(c), and (3) enforcing the

provisions for judicial review of the nondisclosure requirement

contained in subsection 3511(b).[2] See Doe v. Gonzales, 500 F. Supp. 2d

379 (S.D.N.Y. 2007) ("Doe II").  The District Court ruled that

subsections 2709(c) and 3511(b) are unconstitutional on First

Amendment and separation-of-powers grounds, see id. at 405-06, 411-13,

---

[1]For authority to issue NSLs in other contexts, see 12 U.S.C. § 3414(a)(5) (financial records); 15 U.S.C. § 1681u (credit history); 15 U.S.C. § 1681v (full credit reports); 50 U.S.C. § 436 (information concerning investigation of improper disclosure of classified information).

[2]All references to sections are to those in the current version of Title 18, unless otherwise indicated.

416-22, and that subsection 2709(c) could not be severed from section 2709, see id. at 424-25.

We agree that the challenged statutes do not comply with the First Amendment, although not to the extent determined by the District Court, and we also conclude that the relief ordered by the District Court is too broad. We therefore affirm in part, reverse in part, and remand for further proceedings.

## Background

The parties. The Plaintiffs-Appellees are an Internet service provider (John Doe, Inc.), the provider's former president (John Doe), the American Civil Liberties Union ("ACLU"), and the American Civil Liberties Union Foundation ("ACLUF").[3] The Defendants-Appellants are

---

[3]There is some slight confusion as to the status of John Doe, Inc., and John Doe in this litigation, but the confusion has no bearing on any of the issues or the resolution of this appeal. The captions of the District Court's first and second opinions list John Doe as a plaintiff, but do not list John Doe, Inc., see Doe v. Ashcroft, 334 F. Supp. 2d 471 (S.D.N.Y. 2004) ("Doe I"), and Doe II, 500 F. Supp. 2d 379, and there is no reference to John Doe, Inc., in either opinion. The first opinion states that John Doe is "an internet access firm." Doe I, 334 F. Supp. 2d at 475. The second opinion does not indicate whether John Doe is the corporation or its former president. The second opinion grants in part the motion "of John Doe." See Doe II, 500 F. Supp. 2d at 425. However, the Plaintiffs' second amended complaint lists as parties both the corporation and the former president, and the briefs filed in this Court by all parties include John Doe, Inc., and John Doe in the captions as the Plaintiffs-Appellees. We will assume that both the corporation and its former president have been and continue to be Plaintiffs-Appellants, and they are so identified (by pseudonyms) in the caption of this appeal.

-5-

the Attorney General, the Director of the FBI, and the General Counsel of the FBI, all sued in their official capacities.

The NSL. In February 2004, the FBI delivered the NSL at issue in this litigation to John Doe, Inc. The letter directed John Doe, Inc., "to provide the [FBI] the names, addresses, lengths of service and electronic communication transactional records, to include [other information] (not to include message content and/or subject fields) for [a specific] email address." The letter certified that the information sought was relevant to an investigation against international terrorism or clandestine intelligence activities and advised John Doe, Inc., that the law "prohibit[ed] any officer, employee or agent" of the company from "disclosing to any person that the FBI has sought or obtained access to information or records" pursuant to the NSL provisions. The letter also asked that John Doe provide the relevant information personally to a designated FBI office.

Section 2709 (2004 version). Section 2709 was originally enacted in 1986 as part of Title II of the Electronic Communication Privacy Act of 1986, Pub. L. No. 99-508, § 201, 100 Stat. 1848, 1867-68 (1986). It was amended in 1993 by Pub. L. No. 103-142, 107 Stat. 1491 (1993), in 1996 by Pub. L. No. 104-293, 110 Stat. 3461 (1996), and in 2001 by the USA Patriot Act, Pub. L. No. 107-56, 115 Stat. 272, 365 (2001).

Subsection 2709(a) imposes a duty on ECSPs to comply with requests for specified information about a subscriber, and subsection 2709(b) authorizes the Director of the FBI and other FBI officials to request specified information about a subscriber from ECSPs. The texts of subsections 2709(a) and (b), as they existed in 2004, when this lawsuit was filed (the current versions are unchanged) are set out in the margin.[4] Subsection 2709(c), as it existed in 2004, imposed

---

[4]Subsection 2709(a) provides:

(a) Duty to provide. A wire or electronic communication service provider shall comply with a request for subscriber information and toll billing records information, or electronic communication transactional records in its custody or possession made by the Director of the Federal Bureau of Investigation under subsection (b) of this section.

18 U.S.C. § 2709(a).

The statute was not intended to require disclosure of the content of electronic communications. See S. Rep. No. 99-541, at 44 (1986), as reprinted in 1986 USCCAN 3598.

Subsection 2709(b) provides:

(b) Required Certification. The Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, may —
    (1) request the name, address, length of service, and local and long distance toll billing records of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the name, address, length of service, and toll billing records sought are relevant to an authorized investigation to protect

-7-

a blanket nondisclosure requirement prohibiting an ECSP from disclosing receipt of an NSL. The text of subsection 2709(c), as it existed in 2004 (it has since been changed), is set out in the margin.[5]

The lawsuit and the District Court's first decision. The Plaintiffs filed this lawsuit in April 2004 and an amended complaint in May 2004. They contended that section 2709 violated the First and Fourth Amendments by authorizing the FBI to compel the disclosure of

---

against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely on the basis of activities protected by the first amendment to the Constitution of the United States; and

     (2) request the name, address, and length of service of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the information sought is relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely upon the basis of activities protected by the first amendment to the Constitution of the United States.

18 U.S.C. § 2709(b).

[5]Subsection (c), in 2004, provided:

    (c) Prohibition of certain disclosure. No wire or electronic communication service provider, or officer, employee, or agent thereof, shall disclose to any person that the Federal Bureau of Investigation has sought or obtained access to information or records under this section.

18 U.S.C. § 2709(c) (2000).

private records relating to constitutionally protected speech and association; they also contended that the nondisclosure requirement of subsection 2709(c) violated the First Amendment by permanently barring NSL recipients from disclosing that the FBI had sought or obtained information from them.

On the Plaintiffs' motion for summary judgment, the District Court ruled primarily that section 2709 (presumably the disclosure requirements of subsections 2709(a) and (b)) was unconstitutional under the Fourth Amendment because it authorized "coercive searches effectively immune from any judicial process," Doe v. Ashcroft, 334 F. Supp. 2d 471, 494-506 (S.D.N.Y. 2004) ("Doe I"), and that the nondisclosure requirement of subsection 2709(c) was unconstitutional under the First Amendment because it was an unjustified prior restraint and a content-based restriction on speech, see id. at 511-25. Nearly one year later, a District Court in Connecticut preliminarily enjoined enforcement of the nondisclosure requirement of subsection 2709(c), finding a probability of success on the claim that subsection 2709(c) was unconstitutional under the First Amendment because it was an unjustified prior restraint and content-based restriction. See Doe v. Gonzales, 386 F. Supp. 2d 66, 73-75, 82 (D. Conn. 2005) ("Doe CT").

Amendments to the NSL statutes. While appeals in Doe I and Doe CT were pending, Congress amended the NSL statutes in two respects.

-9-

See USA Patriot Improvement and Reauthorization Act of 2005, §§ 115, 116(a), Pub. L. No. 109-177, 120 Stat. 192, 211-14 (Mar. 9, 2006) ("the Reauthorization Act"), amended by USA Patriot Act Additional Reauthorizing Amendments Act of 2006, § 4(b), Pub. L. No. 109-178, 120 Stat. 278, 280 (Mar. 9, 2006) ("Additional Reauthorization Act"), codified at 18 U.S.C.A. § 2709(c) (West Supp. 2008).  First, although leaving intact subsections 2709(a) and (b), requiring compliance with NSLs, Congress amended the nondisclosure prohibition of subsection 2709(c) to require nondisclosure only upon certification by senior FBI officials that "otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person."  Id. § 2709(c)(1) ("the enumerated harms").[6]  The Reauthorization Act amended subsection 2709(c) by replacing the single paragraph of former subsection 2709(c) with four subdivisions, the fourth of which was amended by the Additional Reauthorization Act.  We consider below the text of amended subsection 2709(c), which is set

---

[6]There is an exception to the disclosure prohibition for those to whom disclosure is necessary to comply with the NSL or for an attorney, see 18 U.S.C. § 2709(c)(1), but these persons become subject to the nondisclosure requirement, see id. § 2709(c)(3).

-10-

out in the margin.[7]   Second, in the Reauthorization Act, Congress

_____

[7]Subsection 2709(c), as amended by the Additional Reauthorization Act, provides:

(c) Prohibition of certain disclosure.—
 (1) If the Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, certifies that otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person, no wire or electronic communications service provider, or officer, employee, or agent thereof, shall disclose to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request) that the Federal Bureau of Investigation has sought or obtained access to information or records under this section.
 (2) The request shall notify the person or entity to whom the request is directed of the nondisclosure requirement under paragraph (1).
 (3) Any recipient disclosing to those persons necessary to comply with the request or to an attorney to obtain legal advice or legal assistance with respect to the request shall inform such person of any applicable nondisclosure requirement.  Any person who receives a disclosure under this subsection shall be subject to the same prohibitions on disclosure under paragraph (1).
 (4) At the request of the Director of the Federal Bureau of Investigation or the designee of the Director, any person making or intending to make a disclosure under this section shall identify to the Director or such designee the person to whom such disclosure will be made or to whom such disclosure was made prior to the request, except that nothing in this section shall require a person to inform the Director or such designee of the identity of an attorney to whom disclosure was made or will be made to obtain legal advice or legal assistance with respect to the request under subsection (a).

-11-

added provisions for judicial review, now codified in section 3511, to permit the recipient of an NSL to petition a United States district court for an order modifying or setting aside the NSL, see 18 U.S.C.A. § 3511(a) (West Supp. 2008), and the nondisclosure requirement, see id. § 3511(b). The NSL may be modified if "compliance would be unreasonable, oppressive, or otherwise unlawful." Id. § 3511(a). The nondisclosure requirement, which prohibits disclosure by the NSL recipient of the fact that the FBI has sought or obtained access to the requested information, may be modified or set aside, upon a petition filed by the NSL recipient, id. § 3511(b)(1), if the district court "finds that there is no reason to believe that disclosure may endanger the national security of the United States" or cause other of the enumerated harms (worded slightly differently from subsection 2709(c)(1)), see id. § 3511(b)(2), (3).[8] The nondisclosure requirement

18 U.S.C.A. § 2709(c) (West Supp. 2008).

The only change made by the Additional Reauthorization Act was to clarify in subdivision (4) of subsection 2709(c) that the recipient of an NSL need not notify the FBI of "the identity of an attorney to whom disclosure was made or will be made to obtain legal advice or legal assistance with respect to the request under subsection (a)," id., while the original version of subdivision (4) had stated that "in no circumstance shall a person be required to inform the Director or such designee that the person intends to consult an attorney to obtain legal advice or legal assistance." Id. (Historical and Statutory Notes).

[8]Subsection 3511(b)(2) applies to petitions filed within one year of the issuance of an NSL. A companion provision, subsection 3511(b)(3), using identical terms, applies to petitions filed more

-12-

further provides that if the Attorney General or senior governmental officials certify that disclosure may endanger the national security or interfere with diplomatic relations, such certification shall be treated as "conclusive" unless the court finds that the certification was made "in bad faith." Id. The text of section 3511 is set out in the margin.[9]

---

than one year after issuance of an NSL.

[9]As amended by the Additional Reauthorization Act, section 3511 provides:

(a) The recipient of a request for records, a report, or other information under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947 may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the request. The court may modify or set aside the request if compliance would be unreasonable, oppressive, or otherwise unlawful.

(b)(1) The recipient of a request for records, a report, or other information under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947, may petition any court described in subsection (a) for an order modifying or setting aside a nondisclosure requirement imposed in connection with such a request.

(2) If the petition is filed within one year of the request for records, a report, or other information under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947, the

-13-

court may modify or set aside such a nondisclosure requirement if it finds that there is no reason to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person. If, at the time of the petition, the Attorney General, Deputy Attorney General, an Assistant Attorney General, or the Director of the Federal Bureau of Investigation, or in the case of a request by a department, agency, or instrumentality of the Federal Government other than the Department of Justice, the head or deputy head of such department, agency, or instrumentality, certifies that disclosure may endanger the national security of the United States or interfere with diplomatic relations, such certification shall be treated as conclusive unless the court finds that the certification was made in bad faith.

(3) If the petition is filed one year or more after the request for records, a report, or other information under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947, the Attorney General, Deputy Attorney General, an Assistant Attorney General, or the Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, or in the case of a request by a department, agency, or instrumentality of the Federal Government other than the Federal Bureau of Investigation, the head or deputy head of such department, agency, or instrumentality, within ninety days of the filing of the petition, shall either terminate the nondisclosure requirement or re-certify that disclosure may result in a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person. In the event of re-certification, the court may modify or set aside such a nondisclosure requirement if it finds that there is no reason to believe

that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person. If the recertification that disclosure may endanger the national security of the United States or interfere with diplomatic relations is made by the Attorney General, Deputy Attorney General, an Assistant Attorney General, or the Director of the Federal Bureau of Investigation, such certification shall be treated as conclusive unless the court finds that the recertification was made in bad faith. If the court denies a petition for an order modifying or setting aside a nondisclosure requirement under this paragraph, the recipient shall be precluded for a period of one year from filing another petition to modify or set aside such nondisclosure requirement.

(c) In the case of a failure to comply with a request for records, a report, or other information made to any person or entity under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947, the Attorney General may invoke the aid of any district court of the United States within the jurisdiction in which the investigation is carried on or the person or entity resides, carries on business, or may be found, to compel compliance with the request. The court may issue an order requiring the person or entity to comply with the request. Any failure to obey the order of the court may be punished by the court as contempt thereof. Any process under this section may be served in any judicial district in which the person or entity may be found.

(d) In all proceedings under this section, subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent an unauthorized disclosure of a request for records, a report, or other information made to any person or entity under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947.

The first appeal. On the Government's appeals in Doe I and Doe CT, this Court remanded Doe I for further consideration in light of the amendments to the NSL statutes, and dismissed Doe CT as moot in light of the Government's withdrawal of its objection to disclosure of the identity of the NSL recipient in that case. See Doe v. Gonzales, 449 F.3d 415, 421 (2d Cir. 2006).

Withdrawal of the NSL. On November 7, 2006, the Government informed the District Court in the pending case that it was no longer seeking to enforce the request for information contained in the NSL that had been sent to John Doe with respect to information from John Doe, Inc. See Doe II, 500 F. Supp. 2d at 386 n.3.

The District Court's second decision. On September 6, 2007, the District Court issued its second opinion, ruling, on cross-motions for

---

Petitions, filings, records, orders, and subpoenas must also be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a request for records, a report, or other information made to any person or entity under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947.
(e) In all proceedings under this section, the court shall, upon request of the government, review ex parte and in camera any government submission or portions thereof, which may include classified information.

18 U.S.C.A. § 3511 (West Supp. 2008).

summary judgment, that, despite the amendments to the NSL statutes, subsections 2709(c) and 3511(b) are facially unconstitutional, see id. at 387, and that the Defendants-Appellants are enjoined from issuing NSLs under section 2709 and enforcing the provisions of subsections 2709(c) and 3511(b), see id. at 425-26.[10]  The Court stayed enforcement of its judgment pending appeal. See id. at 426.

In a careful and comprehensive opinion the District Court viewed the "fundamental question" to be "the extent of the authority that the First Amendment allows the government to exercise in keeping its use of NSLs secret, insofar as such secrecy inhibits freedom of speech." Id. at 395.  The Court began its analysis by reaffirming its conclusion from Doe I that the nondisclosure requirement of subsection 2709(c), despite amendment, remains "a prior restraint and a content-based restriction on speech," id. at 397, subject to "strict scrutiny," id. at 398.  The analysis then proceeded in several steps.

First, the Court, applying strict scrutiny and acknowledging that national security is a compelling state interest, ruled that the nondisclosure provisions invested executive officials with broad

---

[10]The Court rejected the Plaintiffs' challenge to the constitutionality of the provisions authorizing courtroom closure for proceedings under section 3511, see 18 U.S.C. § 3511(d), and requiring a district court, upon the Government's request, to review ex parte and in camera Government submissions that may include classified information, see id. § 3511(e). See Doe II, 500 F. Supp. 2d at 422-24. The Plaintiffs-Appellees have not taken a cross-appeal to challenge these rulings.

-17-

discretion to censor speech but failed to provide necessary procedural safeguards. See id. at 399-406.  Specifically, the Court, applying the teaching of Freedman v. Maryland, 380 U.S. 51 (1965), a motion picture licensing case, held that the nondisclosure provisions impermissibly placed the burden of initiating judicial review on the NSL recipient. See Doe II, 500 F. Supp. 2d at 405-06.  However, the Court rejected the Plaintiffs' argument that the nondisclosure provisions invested executive officers with unbridled discretion to suppress speech in violation of Shuttlesworth v. City of Birmingham, 394 U.S. 147 (1969). See Doe II, 500 F. Supp. 2d at 406-09.

Second, the Court, relying on Dickerson v. United States, 530 U.S. 428, 437 (2000), and City of Boerne v. Flores, 521 U.S. 507, 535-36 (1997), ruled that subsection 3511(b) violates the First Amendment and the principle of separation of powers because it prescribes a judicial review procedure and a standard of review inconsistent with First Amendment strict scrutiny requirements. Doe II, 500 F. Supp. 2d at 411-19.

Finally, the Court ruled that the nondisclosure provisions violate the First Amendment because they permit the FBI to issue nondisclosure orders that are not narrowly tailored in scope or duration. See id. at 419-22.  Specifically, the Court noted that the nondisclosure provisions close off a broad spectrum of speech at the core of the First Amendment--political criticism--and that the statute

-18-

contains "no requirement that the government act affirmatively and promptly to terminate the nondisclosure order" if the need for secrecy dissipates. See id. at 422.

The Court then ruled that the unconstitutional portions of the statute were not severable from the remainder of the statute. See id. at 424-25. Specifically, the Court reasoned that because secrecy was integral to the statutory scheme that Congress envisioned, it would not have wanted the NSL statute to operate without the nondisclosure provisions. It therefore invalidated section 2709 in its entirety. See id. at 425.

## Discussion

The validity of the NSL issued to John Doe, Inc., is no longer at issue because the Government has withdrawn it, but the prohibition on disclosing receipt of the NSL remains. We therefore consider only the Government's challenges to the District Court's rulings with respect to the nondisclosure requirement, although to the extent that the nondisclosure requirement encounters valid constitutional objections, we will consider the provisions authorizing issuance of NSLs in connection with the issue of severance.

I. Applicable Principles

The First Amendment principles relevant to the District Court's rulings are well established, although their application to the statutory provisions at issue requires careful consideration. A

judicial order "forbidding certain communications when issued in advance of the time that such communications are to occur" is generally regarded as a "prior restraint," Alexander v. United States, 509 U.S. 544, 550 (1993) (emphasis and internal quotation marks omitted), and is "the most serious and the least tolerable infringement on First Amendment rights," Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). "Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity," Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971) (internal quotation marks omitted), and "carries a heavy burden of showing justification," id. A content-based restriction is subject to review under the standard of strict scrutiny, requiring a showing that the restriction is "narrowly tailored to promote a compelling Government interest." United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 813 (2000).

Where expression is conditioned on governmental permission, such as a licensing system for movies, the First Amendment generally requires procedural protections to guard against impermissible censorship. See Freedman, 380 U.S. at 58. Freedman identified three procedural requirements: (1) any restraint imposed prior to judicial review must be limited to "a specified brief period"; (2) any further restraint prior to a final judicial determination must be limited to "the shortest fixed period compatible with sound judicial resolution";

-20-

and (3) the burden of going to court to suppress speech and the burden of proof in court must be placed on the government. See id. at 58-59 (numbering and ordering follows Supreme Court's discussion of Freedman in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 227 (1990)); Thomas v. Chicago Park District, 534 U.S. 316, 321 (2002).

Once constitutional standards have been authoritatively enunciated, Congress may not legislatively supercede them. See Dickerson, 530 U.S. at 437. "When the political branches of the Government act against the background of a judicial interpretation of the Constitution already issued, it must be understood that in later cases and controversies the Court will treat its precedents with the respect due them under settled principles, including stare decisis, and contrary expectations must be disappointed." City of Boerne, 521 U.S. at 536.

The national security context in which NSLs are authorized imposes on courts a significant obligation to defer to judgments of Executive Branch officials. "[C]ourts traditionally have been reluctant to intrude upon the authority of the Executive in . . . national security affairs," Department of Navy v. Egan, 484 U.S. 518, 530 (1988), and the Supreme Court has acknowledged that terrorism might provide the basis for arguments "for heightened deference to the judgments of the political branches with respect to matters of national security," Zadvydas v. Davis, 533 U.S. 678, 696 (2001).

-21-

The last set of principles implicated by the Plaintiffs'
constitutional challenges concerns the somewhat related issues of
judicial interpretation of unclear statutes, judicial revision of
constitutionally defective statutes, and judicial severance of
constitutionally invalid provisions from otherwise valid provisions.
It is well established that courts should resolve ambiguities in
statutes in a manner that avoids substantial constitutional issues.
See Crowell v. Benson, 285 U.S. 22, 62 (1932); Ashwander v. Tennessee
Valley Authority, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring).

Less clear is the authority of courts to revise a statute to
overcome a constitutional defect.  Of course, it is the province of
the Legislative Branch to legislate.  But in limited circumstances the
Supreme Court has undertaken to fill in a statutory gap arising from
the invalidation of a portion of a statute.  The Court did so in
United States v. Thirty-Seven Photographs, 402 U.S. 363 (1971).
Considering a statute authorizing customs agents to seize obscene
materials, see 19 U.S.C. § 1305(a), the Court noted that the statute
lacked time limits on initiating and completing judicial proceedings,
see Thirty-Seven Photographs, 402 U.S. at 368, limits constitutionally
required by Freedman, 380 U.S. at 58, Teitel Film Corp. v. Cusack, 390
U.S. 139, 141 (1968), and Blount v. Rizzi, 400 U.S. 410, 417 (1971).
After ruling that "the reading into [subsection 1305(a)] of the time
limits required by Freedman is fully consistent with its legislative

-22-

purpose," <u>Thirty-Seven Photographs</u>, 402 U.S. at 370, the Court imposed a 14-day limit on the initiation of judicial proceedings and a 60-day limit on their completion, <u>see</u> <u>id.</u> at 373-74.[11]

More recently, the Court encountered another statutory revision issue in <u>United States v. Booker</u>, 543 U.S. 220 (2005). After ruling in its remedy opinion that the Court's constitutionally required invalidation of the mandatory nature of the Sentencing Guidelines required excision of 18 U.S.C. § 3742(e), the judicial review provision of the Sentencing Reform Act, <u>see</u> <u>Booker</u>, 543 U.S. at 258-60, the Court considered whether to "infer," <u>id.</u> at 260, primarily from other statutes, a judicially created standard of review. The Court did so, selecting, based on "related statutory language, the structure of the statute, and the sound administration of justice," <u>id.</u> at 260-61 (internal quotation marks omitted), "a reasonableness standard of review," <u>id.</u> at 262 (internal quotation marks omitted).

Our Court has also revised statutory provisions to avoid or overcome constitutional defects. In <u>Lee v. Thornton</u>, 538 F.2d 27 (2d Cir. 1976), after invalidating provisions for seizure of vehicles for

---

[11]The Court explained that it had lacked the authority to impose missing time limits in <u>state</u> statutes invalidated in <u>Freedman</u> and <u>Teitel</u>, <u>see</u> <u>Thirty-Seven Photographs</u>, 402 U.S. at 369, and could not have remedied the absence of constitutionally required judicial review procedures in <u>Blount</u> because the statute had been enacted after the relevant Executive Branch officer had explicitly opposed inclusion of a judicial review provision, <u>id.</u> at 369-70.

lack of procedural due process, see id. at 32-33, we required action on petitions for mitigation or remission within 24 hours and required a probable cause hearing within 72 hours, see id. at 33. In United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991) (in banc), we inserted into a post-indictment hearing procedure a requirement for reconsideration of probable cause in connection with a restraint on pretrial disposition of assets. See id. at 1198-1202. See generally Eubanks v. Wilkinson, 937 F.2d 1118, 1122-25 (6th Cir. 1991) (collecting cases where courts have either revised or declined to revise statutory language).

Closely related to the issue of whether a court should revise a statute to avoid or overcome a constitutional defect is the issue of whether to sever the unconstitutional portion of a statute or invalidate an entire statute or even an entire statutory scheme. In general, the choice, as stated by the Supreme Court, depends on whether "the legislature [would] have preferred what is left of its statute to no statute at all." Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 330 (2006). The Court has also cautioned that "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." Buckley v. Valeo, 424 U.S. 1, 108 (1976) (internal quotation marks omitted).

-24-

The Court recently applied this approach to severance in Booker. After ruling that the mandatory nature of the Sentencing Guidelines was unconstitutional, the Court had to consider whether to invalidate the entire Guidelines system or to excise two provisions, 18 U.S.C. §§ 3553(b)(1) and 3742(e), and leave the remainder of the Sentencing Reform Act intact. See Booker, 543 U.S. at 258. Concluding that Congress would have wanted to maintain the Sentencing Guidelines even if they were advisory, rather than mandatory, the Court elected to excise subsections 3553(b)(1) and 3742(e). See id.

II. The Parties' Contentions

With these principles in mind, we turn to the parties' basic contentions. From the Plaintiffs' standpoint, the nondisclosure requirement of subsection 2709(c) presents a straightforward content-based prior restraint that must be tested against all the substantive and procedural limitations applicable to such an impairment of expression. In their view, the nondisclosure requirement is content-based because it proscribes disclosure of the entire category of speech concerning the fact and details of the issuance of an NSL, see Consolidated Edison Co. of New York v. Public Service Commission, 447 U.S. 530, 537 (1980), and it is a prior restraint in the literal sense that it is imposed before an NSL recipient has an opportunity to speak, see Alexander, 509 U.S. at 550. From these premises, the Plaintiffs conclude that subsection 2709(c) is unconstitutional under

-25-

strict scrutiny review because it prohibits disclosure in circumstances not narrowly tailored to a compelling governmental interest and operates as a licensing scheme without the procedural requirement of placing on the Government the burden of initiating judicial review and sustaining a burden of proof. The Plaintiffs also challenge subsection 3511(b) on the grounds that (1) the judicial review provisions do not require the Government to initiate judicial review and to sustain a burden of proof and (2) certification of certain risks by senior governmental officials is entitled to a conclusive presumption (absent bad faith). These aspects of subsection 3511(b) are alleged to violate First Amendment procedural standards and the separation of powers.

The Government responds that, to whatever extent the nondisclosure requirement can be considered a content-based prior restraint, it is subject to less rigorous scrutiny than those imposed on more typical First Amendment claimants who wish to speak or parade in public places, distribute literature, or exhibit movies. The Government points out that the nondisclosure requirement arises not to suppress a pre-existing desire to speak, but only as a result of governmental interaction with an NSL recipient. In the Government's view, the nondisclosure requirement survives a First Amendment challenge on the same rationale that has permitted secrecy requirements to be imposed on witnesses before grand juries, see

-26-

<u>Hoffmann-Pugh v. Keenan</u>, 338 F.3d 1136, 1140 (10th Cir. 2003); <u>In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records</u>, 864 F.2d 1559, 1564 (11th Cir. 1989), and judicial misconduct proceedings, <u>see</u> <u>Kamasinski v. Judicial Review Council</u>, 44 F.3d 106 (2d Cir. 1994); <u>First Amendment Coalition v. Judicial Inquiry and Review Board</u>, 784 F.2d 467, 478-79 (3d Cir. 1986) (in banc), and on a person or entity that acquired sensitive material through pretrial discovery, <u>see</u> <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1984).

III. The Interpretation of the NSL Statutes

In assessing these contentions, we need to interpret the nondisclosure requirements before ruling on their constitutionality. As set forth above in notes 7 and 9, subsection 2709(c) specifies what senior FBI officials must certify to trigger the nondisclosure requirement, and subsection 3511(b) specifies, in similar but not identical language, what a district court must find in order to modify or set aside such a requirement. Senior FBI officials must certify that in the absence of a nondisclosure requirement "there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." 18 U.S.C. § 2709(c)(1). Upon challenge by an NSL recipient, a district court may modify or set aside a nondisclosure requirement "if it finds that there is no reason

-27-

to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." Id. § 3511(b)(2).

These provisions present three issues for interpretation: (1) what is the scope of the enumerated harms? (2) what justifies a nondisclosure requirement? and (3) which side has the burden of proof?

The enumerated harms. The first issue concerns the scope of the language identifying the enumerated harms. It is the risk of these harms that senior FBI officials must certify in order to impose the nondisclosure requirement. These harms are "danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person." 18 U.S.C. § 2709(c)(1). The last phrase is particularly troublesome. It could extend the Government's power to impose secrecy to a broad range of information relevant to such matters as ordinary tortious conduct, based on the risk of "danger to the physical safety of any person." A secrecy requirement of such broad scope would present highly problematic First Amendment issues. However, this potential reach of the nondisclosure requirement can be reined in if all the enumerated harms are keyed to the same standard that governs

-28-

information sought by an NSL, i.e., "relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities." Id. § 2709(b)(1), (2).

At oral argument, the Government wisely urged us to avoid this problem by construing the scope of the enumerated harms in light of the purposes for which an NSL is issued.  We readily accept that view of the nondisclosure requirement, thereby at least narrowing, though not eliminating, the First Amendment issues.  Thus, we will adjudicate the constitutionality of the nondisclosure requirement in subsection 2709(c) by construing this requirement to apply only when senior FBI officials certify that disclosure may result in an enumerated harm that is related to "an authorized investigation to protect against international terrorism or clandestine intelligence activities." Id.

The required showing. The second issue concerns what must be shown to maintain a nondisclosure requirement upon judicial review. A district court, considering a challenge filed within one year of the issuance of an NSL, is authorized to modify or set aside a nondisclosure requirement "if it finds that there is no reason to believe that disclosure may" risk one of the enumerated harms. 18 U.S.C. § 3511(b)(2).  At oral argument, the Government took the position that "reason" in the quoted phrase means "good reason."  We accept this common-sense understanding of subsection 3511(b)(2). Cf. McGehee v. Casey, 718 F.2d 1137, 1148 (D.C. Cir. 1983) ("[C]ourts

. . . must . . . satisfy themselves . . . that the CIA in fact had good reason to classify, and therefore censor, the materials at issue."). We take a similar view of the identical language in subsection 3511(b)(3), governing a challenge filed more than one year after issuance of an NSL.

Moreover, a reason will not qualify as "good" if it surmounts only a standard of frivolousness. We understand the statutory requirement of a finding that an enumerated harm "may result" to mean more than a conceivable possibility. The upholding of nondisclosure does not require the certainty, or even the imminence of, an enumerated harm, but some reasonable likelihood must be shown. The Government acknowledges that "while the 'reason to believe' standard in subsection 3511(b) unquestionably contemplates a deferential standard of review, in no way does it foreclose a court from evaluating the reasonableness of the FBI's judgments." Reply Br. for Appellants at 9.

The burden of proof. The third issue concerns the burden of proof applicable to the finding contemplated by subsection 3511(b)(2). Does this provision mean that, in order to have a district court modify or set aside a nondisclosure requirement, an ECSP must persuade a court that there is no good reason to believe that disclosure may risk one of the enumerated harms, or that, in order to maintain a nondisclosure requirement, the Government must persuade a court that there is a good

-30-

reason to believe that disclosure may risk one of the enumerated harms?  As the Government acknowledged at oral argument, subsection 3511(b) is silent as to the burden of proof.  The Government also acknowledged at oral argument that these provisions should be understood to place on the Government the burden to persuade a district court that there is a good reason to believe that disclosure may risk one of the enumerated harms, and that a district court, in order to modify or set aside a nondisclosure order, must find that such a good reason exists, rather than find the negative, i.e., that no good reason exists to believe that disclosure may risk one of the enumerated harms.  We agree.

Under the principles outlined above, we are satisfied that we may accept the Government's concessions on all three matters of statutory interpretation without trenching on Congress's prerogative to legislate.  See Thirty-Seven Photographs, 402 U.S. at 368-70; Monsanto, 924 F.2d at 1198-1202; Lee, 538 F.2d at 33.  We will therefore construe subsection 2709(c)(1) to mean that the enumerated harms must be related to "an authorized investigation to protect against international terrorism or clandestine intelligence activities," 18 U.S.C. § 2709(b)(1), (2), and construe subsections 3511(b)(2) and (3) to place on the Government the burden to persuade a district court that there is a good reason to believe that disclosure may result in one of the enumerated harms, and to mean that

-31-

a district court, in order to modify or set aside a nondisclosure order, must find that such a good reason exists.

IV. Constitutionality of the NSL Statutes

(a) Basic approach. Turning to the First Amendment issues with respect to the NSL statutes as thus construed, we believe that the proper path to decision lies between the broad positions asserted by the parties.  Although the nondisclosure requirement is in some sense a prior restraint, as urged by the Plaintiffs, it is not a typical example of such a restriction for it is not a restraint imposed on those who customarily wish to exercise rights of free expression, such as speakers in public fora, distributors of literature, or exhibitors of movies. Cf. Seattle Times, 467 U.S. at 33 (noting that prohibition on disclosure of material obtained through pretrial discovery was "not the kind of classic prior restraint that requires exacting First Amendment scrutiny").[12]  And although the nondisclosure requirement is triggered by the content of a category of information, that category, consisting of the fact of receipt of an NSL and some related details, is far more limited than the broad categories of information that have

<hr>

[12]We note that none of the decisions discussing the appropriateness or limits of grand jury secrecy has referred to a nondisclosure requirement in that context as a prior restraint. See also McGehee, 718 F.2d at 1147 (noting that neither the CIA's classification of portions of a former employee's proposed book as top secret nor a court order rejecting a First Amendment challenge "constitutes a prior restraint in the traditional sense").

been at issue with respect to typical content-based restrictions. Cf. Consolidated Edison, 447 U.S. at 537.

On the other hand, we do not accept the Government's contentions that the nondisclosure requirement can be considered to satisfy First Amendment standards based on analogies to secrecy rules applicable to grand juries, judicial misconduct proceedings, and certain interactions between individuals and governmental entities. The justification for grand jury secrecy inheres in the nature of the proceedings. As the Supreme Court has noted, such secrecy serves several interests common to most such proceedings, including enhancing the willingness of witnesses to come forward, promoting truthful testimony, lessening the risk of flight or attempts to influence grand jurors by those about to be indicted, and avoiding public ridicule of those whom the grand jury declines to indict. See Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218-19 (1979).

Although these interests do not warrant a prohibition on disclosure of a witness's own testimony after the term of the grand jury has ended, see Butterworth v. Smith, 494 U.S. 624, 630-36 (1990), they generally suffice to maintain grand jury secrecy against First Amendment claims to divulge information a witness obtained through participation in the grand jury process. See Hoffman-Pugh, 338 F.3d at 1139-40. Unlike the grand jury proceeding, as to which interests in secrecy arise from the nature of the proceeding, the nondisclosure

-33-

requirement of subsection 2709(c) is imposed at the demand of the Executive Branch under circumstances where secrecy might or might not be warranted, depending on the circumstances alleged to justify such secrecy.

The Government's analogy to permissible limitations on disclosures in connection with judicial misconduct proceedings also fails to justify the nondisclosure requirement of subsection 2709(c). We considered First Amendment challenges to nondisclosure requirements imposed with respect to judicial misconduct proceedings in Kamasinski. Initially, we noted the interests in confidentiality in such proceedings that the Supreme Court had identified in Landmark Communications, Inc. v. Virginia, 435 U.S. 829 (1978). See Kamasinski, 44 F.3d at 110. These interests are: "(1) encouraging the filing of complaints; (2) protecting judges from unwarranted complaints; (3) . . . avoiding premature announcement of groundless complaints; and (4) facilitating the work of the commission by giving it flexibility to accomplish its mission through voluntary retirement or resignation of offending judges." Id.; see Landmark, 435 U.S. at 835-37. Again, unlike the context of subsection 2709(c), these considerations inhere in the nature of judicial misconduct proceedings. In Kamasinski, we ruled that disclosure of the substance of an individual's complaint could not be prohibited, see 44 F.3d at 110, but that the First Amendment permitted prohibition of disclosure of the fact that an

-34-

individual had filed a complaint or had testified, and of information gained through interaction with the misconduct commission, see id. at 111. We noted, however, that these prohibitions were justified in part by their cessation once the commission had determined whether or not there was probable cause that judicial misconduct had occurred. See id. at 112. That temporal limitation, important in the balance of governmental versus free speech interests, is absent from the nondisclosure requirement of subsection 2709(c).

The Government's analogy to certain interactions between an individual and governmental entities is also unavailing. The Government seeks to enlist cases involving classification of former CIA employees' information as top secret, see United States v. Snepp, 897 F.2d 138 (4th Cir. 1990), and United States v. Marchetti, 466 F.2d 1309 (4th Cir. 1972), and a prohibition on disclosure of information obtained by a litigant through court-ordered discovery, see Seattle Times, 467 U.S. 20. We fail to appreciate the analogy between the individuals or the entity seeking disclosure in those cases and John Doe, Inc., who had no interaction with the Government until the Government imposed its nondisclosure requirement upon it.

The nondisclosure requirement of subsection 2709(c) is not a typical prior restraint or a typical content-based restriction warranting the most rigorous First Amendment scrutiny. On the other hand, the Government's analogies to nondisclosure prohibitions in

-35-

other contexts do not persuade us to use a significantly diminished standard of review. In any event, John Doe, Inc., has been restrained from publicly expressing a category of information, albeit a narrow one, and that information is relevant to intended criticism of a governmental activity. See Gentile v. State Bar of Nevada, 501 U.S. 1030, 1034 (1991) ("There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment."); Landmark, 435 U.S. at 838 ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.") (internal quotation marks omitted).

The panel is not in agreement as to whether, in this context, we should examine subsection 2709(c) under a standard of traditional strict scrutiny or under a standard that, in view of the context, is not quite as "exacting" a form of strict scrutiny, Seattle Times, 467 U.S. at 33. Ultimately, this disagreement has no bearing on our disposition because, as we discuss below, the only two limitations on NSL procedures required by First Amendment procedural standards would be required under either degree of scrutiny. We note that, for purposes of the litigation in this Court, the Government has conceded that strict scrutiny is the applicable standard.

(b) Strict scrutiny. Under strict scrutiny review, the Government

must demonstrate that the nondisclosure requirement is "narrowly tailored to promote a compelling Government interest," <u>Playboy Entertainment</u>, 529 U.S. at 813, and that there are no "less restrictive alternatives [that] would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve," <u>Reno v. ACLU</u>, 521 U.S. 844, 874 (1997). Since "[i]t is obvious and unarguable that no governmental interest is more compelling than the security of the Nation," <u>Haig v. Agee</u>, 453 U.S. 280, 307 (1981) (internal quotation marks omitted), the principal strict scrutiny issue turns on whether the narrow tailoring requirement is met, and this issue, as the District Court observed, essentially concerns the process by which the nondisclosure requirement is imposed and tested, <u>see</u> <u>Doe II</u>, 500 F. Supp. 2d at 399.

With subsections 2709(c) and 3511(b) interpreted as set forth above, <u>see</u> Part III, <u>supra</u>, two aspects of that process remain principally at issue: the absence of a requirement that the Government initiate judicial review of the lawfulness of a nondisclosure requirement and the degree of deference a district court is obliged to accord to the certification of senior governmental officials in ordering nondisclosure.[13]

---

[13]The Plaintiffs challenged the nondisclosure requirement on the ground that the discretion vested in senior FBI officials in determining whether to issue an NSL was unconstitutionally broad, <u>see</u> <u>Shuttlesworth</u>, 394 U.S. 147. The District Court rejected this claim.

(i) <u>Absence of requirement that the Government initiate judicial review.</u> The Plaintiffs alleged, and the District Court agreed, that the third <u>Freedman</u> procedural requirement applies to the NSL statutes, requiring the Government to initiate judicial review of its imposition of a nondisclosure requirement. <u>See</u> <u>Freedman</u>, 380 U.S. at 58-59.

The Government advances several arguments why the third <u>Freedman</u> safeguard should not apply to judicial review of the nondisclosure requirement.  First, the Government contends that it would be unduly burdened if it had to initiate a lawsuit to enforce the nondisclosure requirement in the more than 40,000 NSL requests that were issued in 2005 alone, according to the 2007 report of the Inspector General of the Department of Justice ("OIG Report").[14] <u>See</u> <u>Doe II</u>, 500 F. Supp. 2d at 390. Related to this argument is the point, advanced in the Government's brief to distinguish <u>Freedman</u>, that "there is no reason

_____

<u>See</u> <u>Doe II</u>, 500 F. Supp. 2d at 406-09.  In this Court, the Plaintiffs renewed this argument only in footnotes.  Under the circumstances, we deem the issue forfeited on appeal. <u>See</u> <u>United States v. Restrepo</u>, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").

[14]An unclassified version of the OIG Report, formally titled "A Review of the Federal Bureau of Investigation's Use of National Security Letters," is available at <http://www.usdoj.gov/oig/special/s0703b/final.pdf>, last visited Oct. 20, 2008.  An unclassified version of a follow-up 2008 OIG Report, formally titled "A Review of the FBI's Use of National Security Letters: Assessment of Corrective Actions and Examination of NSL Usage in 2006," is available at <http://www.usdoj.gov/oig/special/s0803b/final.pdf>, last visited Oct. 20, 2008.

to believe that most recipients of NSLs wish to disclose that fact to anyone." Br. for Appellants at 33.

Instead of determining whether, as the Government contends, a burden of initiating litigation can prevent application of the third Freedman procedural safeguard, we consider an available means of minimizing that burden, use of which would substantially avoid the Government's argument. The Government could inform each NSL recipient that it should give the Government prompt notice, perhaps within ten days, in the event that the recipient wishes to contest the nondisclosure requirement. Upon receipt of such notice, the Government could be accorded a limited time, perhaps 30 days, to initiate a judicial review proceeding to maintain the nondisclosure requirement, and the proceeding would have to be concluded within a prescribed time, perhaps 60 days. In accordance with the first and second Freedman safeguards, the NSL could inform the recipient that the nondisclosure requirement would remain in effect during the entire interval of the recipient's decision whether to contest the nondisclosure requirement, the Government's prompt application to a court, and the court's prompt adjudication on the merits. See Freedman, 380 U.S. at 58. The NSL could also inform the recipient that the nondisclosure requirement would remain in effect if the recipient declines to give the Government notice of an intent to challenge the requirement or, upon a challenge, if the Government

-39-

prevails in court. If the Government is correct that very few NSL recipients have any interest in challenging the nondisclosure requirement (perhaps no more than three have done so thus far), this "reciprocal notice procedure" would nearly eliminate the Government's burden to initiate litigation (with a corresponding minimal burden on NSL recipients to defend numerous lawsuits). Thus, the Government's litigating burden can be substantially minimized, and the resulting slight burden is not a reason for precluding application of the third Freedman safeguard.

The Government's second argument for not applying Freedman's third safeguard relies on an attempt to analogize the nondisclosure requirement in NSLs to nondisclosure requirements imposed in the context of pre-existing interaction with a governmental activity. Unlike the movies subject to licensing in Freedman, which were created independently of governmental activity, the information kept secret by an NSL, the Government contends, is "information that the recipient learns by (and only through) his participation in the [G]overnment's own investigatory processes." Br. for Appellants at 31. Although the governmental interaction distinction has validity with respect to the litigant obtaining discovery material in Seattle Times and the former CIA employees seeking to disclose sensitive material in Marchetti and Snepp, we think it has no application to an ECSP with no relevant governmental interaction prior to receipt of an NSL. The recipient's

"participation" in the investigation is entirely the result of the Government's action. The Government also relies on analogies to secrecy requirements in grand jury and judicial misconduct proceedings, analogies we have previously rejected. See Part IV(a), supra.

Third, the Government seeks to avoid Freedman's third requirement on the ground that the risk of administrative error "is significantly smaller under [sub]section 2709(c) than under licensing schemes like the one in Freedman." Br. for Appellants at 33. Although the risk of error may be smaller, it remains sufficient to require a judicial review procedure that conforms to Freedman. The OIG Report concluded that "'the FBI used NSLs in violation of applicable NSL statutes, Attorney General Guidelines, and internal FBI policies.'" Doe II, 500 F. Supp. 2d at 392 (quoting OIG Report at 124).

Fourth, the Government points out that the Supreme Court did not apply the third Freedman requirement to the licensing scheme that was challenged in FW/PBS, which concerned licenses for sexually oriented businesses. However, the distinctions with Freedman noted by the Court in FW/PBS point in favor of applying the third Freedman requirement to subsection 2709(c). First, the Court noted that the licensing authority was not "passing judgment on the content of any protected speech," but was performing the "ministerial action" of "review[ing] the general qualifications of each license applicant."

-41-

<u>FW/PBS</u>, 493 U.S. at 229. Under subsection 2709(c), however, the Government is exercising discretion to prohibit disclosure of speech on a topic of significant public concern. Second, the Court noted that the license applicant in <u>FW/PBS</u> had "every incentive" to initiate a judicial challenge to a license denial because the license was "the key to the applicant's obtaining and maintaining a business," <u>id.</u> at 229-30, a greater incentive than the movie distributor had in <u>Freedman</u>, "where only one film was censored," <u>id.</u> at 229. The typical NSL recipient, by contrast, who runs a business that is in no sense dependent on revealing the receipt of an NSL, has little if any incentive to initiate a court challenge in order to speak publicly about such receipt. <u>FW/PBS</u> does not provide a basis for ignoring the third <u>Freedman</u> requirement.

We acknowledge, however, that the nondisclosure requirement of subsection 2709(c) is not facially a licensing scheme of the sort at issue in <u>Freedman</u>. Unlike an exhibitor of movies, John Doe, Inc., did not intend to speak and was not subject to any administrative restraint on speaking prior to the Government's issuance of an NSL. Nevertheless, once the NSL arrived, John Doe, Inc., did wish to speak publicly about it and was prohibited from doing so by an administrative order. <u>Freedman</u>'s third requirement cannot be disregarded simply because subsection 2709(c) does not impose a traditional licensing scheme.

The availability of a minimally burdensome reciprocal notice procedure for governmental initiation of judicial review and the inadequacy of the Government's attempts to avoid the third Freedman safeguard persuade us that this safeguard, normally required where strict scrutiny applies, must be observed. Therefore, in the absence of Government-initiated judicial review, subsection 3511(b) is not narrowly tailored to conform to First Amendment procedural standards. We conclude, as did the District Court, see Doe II, 500 F. Supp. 2d at 401-06, that subsection 3511(b) does not survive either traditional strict scrutiny or a slightly less exacting measure of such scrutiny.

(ii) Deference to administrative discretion.  The Plaintiffs contended, and the District Court agreed, that the judicial review contemplated by subsection 3511(b) authorizes a degree of deference to the Executive Branch that is inconsistent with First Amendment standards.  Although acknowledging that "national security is a compelling interest justifying nondisclosure in certain situations," id. at 418, the District Court faulted the review provision in several respects.  First, the Court stated that the statute "requires the court to blindly credit a finding that there 'may' be a reason-- potentially any conceivable and not patently frivolous reason--for it to believe disclosure will result in a certain harm." Id.  Our construction of the statute, however, avoids that concern.  As indicated above, see Part III, supra, we interpret subsection 3511(b)

-43-

to place on the Government the burden to show a "good" reason to believe that disclosure may result in an enumerated harm, i.e., a harm related to "an authorized investigation to protect against international terrorism or clandestine intelligence activities," 18 U.S.C. § 2709(b)(1), (2), and to place on a district court an obligation to make the "may result" finding only after consideration, albeit deferential, of the Government's explanation concerning the risk of an enumerated harm.

Assessing the Government's showing of a good reason to believe that an enumerated harm may result will present a district court with a delicate task. While the court will normally defer to the Government's considered assessment of why disclosure in a particular case may result in an enumerated harm related to such grave matters as international terrorism or clandestine intelligence activities, it cannot, consistent with strict scrutiny standards, uphold a nondisclosure requirement on a conclusory assurance that such a likelihood exists. In this case, the director of the FBI certified that "the disclosure of the NSL itself or its contents may endanger the national security of the United States." To accept that conclusion without requiring some elaboration would "cast Article III judges in the role of petty functionaries, persons required to enter as a court judgment an executive officer's decision, but stripped of capacity to evaluate independently whether the executive's decision is

correct." <u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417, 426 (1995).

In showing why disclosure would risk an enumerated harm, the Government must at least indicate the nature of the apprehended harm and provide a court with some basis to assure itself (based on <u>in camera</u> presentations where appropriate) that the link between disclosure and risk of harm is substantial.[15] As the Government acknowledges, "Nothing in [subs]ection 3511(b) would require a district court to confine judicial review to the FBI's necessarily unelaborated public statement about the need for nondisclosure. The provisions in [subs]ections 3511(d) and (e) for <u>ex parte</u> and <u>in camera</u> review provide a ready mechanism for the FBI to provide a more complete explanation of its reasoning, and the court is free to elicit such an explanation as part of the review process." Reply Br. for Appellants at 10 n.4.

We have every confidence that district judges can discharge their review responsibility with faithfulness to First Amendment considerations and without intruding on the prerogative of the Executive Branch to exercise its judgment on matters of national security. Such a judgment is not to be second-guessed, but a court must receive some indication that the judgment has been soundly

---

[15]The Government sought to amplify its grounds for nondisclosure in a classified declaration submitted <u>ex parte</u> to the District Court and made available for our <u>in camera</u> review. This declaration will be available to the District Court on remand.

reached.   As the Supreme Court has noted in matters of similar gravity, the Constitution "envisions a role for all three branches when individual liberties are at stake." Hamdi v. Rumsfeld, 542 U.S. 507, 536 (2004).

The District Court's second reason for considering the judicial review procedure of subsection 3511(b) deficient was a perceived preclusion of a court's authority, when presented with a "plausible, reasonable, and specific" enumerated harm, to balance "the potential harm against the particular First Amendment interest raised by a particular challenge." Doe II, 500 F. Supp. 2d at 418.   We see no deficiency in this regard.   The balance sought by the District Court is an important aspect of judicial review of prior restraints. See, e.g., New York Times Co. v. United States, 403 U.S. 713 (1971).   That is why we have interpreted the statutory standard to permit a nondisclosure requirement only upon an adequate demonstration that a good reason exists reasonably to apprehend a risk of an enumerated harm, and have expressly read the enumerated harms as being linked to international terrorism or clandestine intelligence activities.  As a result of this interpretation, the balance sought by the District Court is now inherent in the statutory standard.  A demonstration of a reasonable likelihood of potential harm, related to international terrorism or clandestine intelligence activities, will virtually always outweigh the First Amendment interest in speaking about such a

-46-

limited and particularized occurrence as the receipt of an NSL and will suffice to maintain the secrecy of the fact of such receipt.

The District Court's third objection to the judicial review procedure is far more substantial. The Court deemed inconsistent with strict scrutiny standards the provision of subsections 3511(b)(2) and (b)(3) specifying that a certification by senior governmental officials that disclosure may "endanger the national security of the United States or interfere with diplomatic relations . . . shall be treated as conclusive unless the court finds that the certification was made in bad faith." 18 U.S.C. § 3511(b)(2). See Doe II, 500 F. Supp. 2d at 419. We agree.

There is not meaningful judicial review of the decision of the Executive Branch to prohibit speech if the position of the Executive Branch that speech would be harmful is "conclusive" on a reviewing court, absent only a demonstration of bad faith. To accept deference to that extraordinary degree would be to reduce strict scrutiny to no scrutiny, save only in the rarest of situations where bad faith could be shown. Under either traditional strict scrutiny or a less exacting application of that standard, some demonstration from the Executive Branch of the need for secrecy is required in order to conform the nondisclosure requirement to First Amendment standards. The fiat of a governmental official, though senior in rank and doubtless honorable in the execution of official duties, cannot displace the judicial

-47-

obligation to enforce constitutional requirements. "Under no circumstances should the Judiciary become the handmaiden of the Executive." United States v. Smith, 899 F.2d 564, 569 (6th Cir. 1990).

V. Remedy

To recapitulate our conclusions, we (1) construe subsection 2709(c) to permit a nondisclosure requirement only when senior FBI officials certify that disclosure may result in an enumerated harm that is related to "an authorized investigation to protect against international terrorism or clandestine intelligence activities," (2) construe subsections 3511(b)(2) and (b)(3) to place on the Government the burden to show that a good reason exists to expect that disclosure of receipt of an NSL will risk an enumerated harm, (3) construe subsections 3511(b)(2) and (b)(3) to mean that the Government satisfies its burden when it makes an adequate demonstration as to why disclosure in a particular case may result in an enumerated harm, (4) rule that subsections 2709(c) and 3511(b) are unconstitutional to the extent that they impose a nondisclosure requirement without placing on the Government the burden of initiating judicial review of that requirement, and (5) rule that subsections 3511(b)(2) and (b)(3) are unconstitutional to the extent that, upon such review, a governmental official's certification that disclosure may endanger the national security of the United States or interfere with diplomatic relations is treated as conclusive.

Implementing these conclusions requires us to apply the principles of judicial interpretation and limited revision of statutes and consider the related issue of severance discussed in Part I, supra. We are satisfied that conclusions (1), (2), and (3) fall within our judicial authority to interpret statutes to avoid constitutional objections or conform to constitutional requirements. Conclusions (4) and (5) require further consideration.

We deem it beyond the authority of a court to "interpret" or "revise" the NSL statutes to create the constitutionally required obligation of the Government to initiate judicial review of a nondisclosure requirement. However, the Government might be able to assume such an obligation without additional legislation. As we discussed in Part IV(b)(i), supra, the Government's concern about the potentially substantial burden of initiating litigation can be readily alleviated by use of the reciprocal notice procedure we have suggested.

If the Government uses the suggested reciprocal notice procedure as a means of initiating judicial review, there appears to be no impediment to the Government's including notice of a recipient's opportunity to contest the nondisclosure requirement in an NSL. If such notice is given, time limits on the nondisclosure requirement pending judicial review, as reflected in Freedman, would have to be applied to make the review procedure constitutional. We would deem it

to be within our judicial authority to conform subsection 2709(c) to First Amendment requirements, by limiting the duration of the nondisclosure requirement, absent a ruling favorable to the Government upon judicial review, to the 10-day period in which the NSL recipient decides whether to contest the nondisclosure requirement, the 30-day period in which the Government considers whether to seek judicial review, and a further period of 60 days in which a court must adjudicate the merits, unless special circumstances warrant additional time. See Thirty-Seven Photographs, 402 U.S. at 373-74 (imposing time limits to satisfy constitutional requirements). If the NSL recipient declines timely to precipitate Government-initiated judicial review, the nondisclosure requirement would continue, subject to the recipient's existing opportunities for annual challenges to the nondisclosure requirement provided by subsection 3511(b).[16] If such an annual challenge is made, the standards and burden of proof that we have specified for an initial challenge would apply, although the

---

[16]The District Court ruled that those opportunities were constitutionally flawed because they unduly prolonged the duration of the nondisclosure requirement, see Doe II, 500 F. Supp. 2d at 421-22. We are satisfied, however, that, once the Government has initiated judicial review and prevailed on the merits, limiting an NSL recipient to annual opportunities thereafter to terminate the nondisclosure requirement does not violate First Amendment procedural requirements. The information subject to nondisclosure is extremely limited, and, once the need for secrecy--avoiding risk of harm related to international terrorism--has been shown, that need is not likely to dissipate soon.

Government would not be obliged to initiate judicial review.

In those instances where an NSL recipient gives notice of an intent to challenge the disclosure requirement, the Government would have several options for completing the reciprocal notice procedure by commencing such review. First, it is arguable that the Government can adapt the authority now set forth in subsection 3511(c) for the purpose of initiating judicial review. That provision authorizes the Attorney General to "invoke the aid of any [relevant] district court" in the event of "a failure to comply with a request for . . . information made to any person or entity under section 2709(b)" or other provisions authorizing NSLs. 18 U.S.C. § 3511(c). Since an NSL includes both a request for information and a direction not to disclose that the FBI has sought or obtained information, an NSL recipient's timely notice of intent to disclose, furnished in response to notice in an NSL of an opportunity to contest the nondisclosure requirement, can perhaps be considered the functional equivalent of the "failure to comply" contemplated by subsection 3511(c). Second, the Government might be able to identify some other statutory authority to invoke the equitable power of a district court to prevent a disclosure that the Government can demonstrate would risk harm to national security. Third, and as a last resort, the Government could seek explicit congressional authorization to initiate judicial review of a nondisclosure requirement that a recipient wishes to challenge.

We leave it to the Government to consider how to discharge its obligation to initiate judicial review.

In view of these possibilities, we need not invalidate the entirety of the nondisclosure requirement of subsection 2709(c) or the judicial review provisions of subsection 3511(b). Although the conclusive presumption clause of subsections 3511(b)(2) and (b)(3) must be stricken, we invalidate subsection 2709(c) and the remainder of subsection 3511(b) only to the extent that they fail to provide for Government-initiated judicial review. The Government can respond to this partial invalidation ruling by using the suggested reciprocal notice procedure. With this procedure in place, subsections 2709(c) and 3511(b) would survive First Amendment challenge.

These partial invalidations of subsections 2709(c) and 3511(b) oblige us to consider the issue of severance. The District Court, understandably unaware of the narrowing interpretations we have made, invalidated the entirety of subsection 2709(c) and the entirety of subsection 3511(b). See Doe II, 500 F. Supp. 2d at 424. Then, concluding that Congress would not have wanted the NSL authorization contained in subsections 2709(a) and (b) to stand in the absence of a nondisclosure requirement, it invalidated the entirety of section 2709. Id. As a result of these rulings, the court enjoined FBI officials from issuing NSL letters under section 2709, enforcing the nondisclosure requirement of subsection 2709(c), and enforcing the

-52-

provisions for judicial review of the nondisclosure requirement contained in subsection 3511(b). With the NSL statutes now construed to avoid some of the Plaintiffs' constitutional challenges and partially invalidated to render the statutes constitutional, we disagree that section 2709 and subsection 3511(b) must be stricken and their enforcement enjoined.

We have no doubt that if Congress had understood that First Amendment considerations required the Government to initiate judicial review of a nondisclosure requirement and precluded a conclusive certification by the Attorney General, it would have wanted the remainder of the NSL statutes to remain in force. Congress would surely have wanted the Government to retain the authority to issue NSLs even if all aspects of the nondisclosure requirement of subsection 2709(c) and the judicial review provisions of section 3511(b) had been invalidated. As the Government points out, even without a nondisclosure requirement, it can protect the national interest by issuing NSLs only where it expects compliance with a request for secrecy to be honored. See Br. for Appellants at 60-61. A fortiori, authority to issue NSLs should be preserved in view of the limiting constructions and limited invalidations we have ordered. We therefore sever the conclusive presumption language of subsection 3511(b) and leave intact the remainder of subsection 3511(b) and the entirety of section 2709 (with Government-initiated judicial review

required). As a result of this ruling, we modify the District Court's injunction by limiting it to enjoining FBI officials from enforcing the nondisclosure requirement of section 2709(c) in the absence of Government-initiated judicial review.[17]

There remains for consideration the issue of the procedure to be followed with respect to judicial review of the nondisclosure requirement with respect to the NSL issued to John Doe, Inc. Although we have ruled that the Government is obliged to initiate judicial review of a nondisclosure requirement, it would be pointless to dismiss the pending litigation and direct the Government to start anew. With judicial review already initiated in the District Court and the constitutionality of the disclosure requirement salvaged by the statutory interpretations and partial invalidations we have ordered, the sounder course is to remand so that the Government may have an opportunity to sustain its burden of proof and satisfy the constitutional standards we have outlined for maintaining the disclosure requirement. See 28 U.S.C. § 2106.

## Conclusion

Accordingly, for all the foregoing reasons, subsections 2709(c)

---

[17]With the Government having withdrawn its request for the information originally sought by the NSL issued to John Doe, Inc., and our severance ruling having retained the entirety of section 2709, we need not consider the constitutionality of using NSLs to request information.

and 3511(b) are construed in conformity with this opinion and partially invalidated only to the extent set forth in this opinion, the injunction is modified as set forth in this opinion, and the judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.